IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KENJAH J. HUGHSTON, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 23-CV-1898 |
| | : | |
| WARDEN SEAN P. MCGEE, | : | |
| *et al.*, | : | |
|     Defendants. | : | |

### MEMORANDUM

**KENNEY, J.**                                                                                                                     **JUNE 20, 2023**

      Plaintiff Kenjah J. Hughston, a prisoner currently incarcerated at the Montgomery County Correctional Facility ("MCCF"), brings this civil rights action pursuant to 42 U.S.C. § 1983 based on an alleged failure to provide Hughston at least two-hours of daily recreation in violation of the Pennsylvania State Administrative Code. Hughston also claims to have been placed in maximum security housing without a hearing. He seeks to proceed *in forma pauperis*. For the following reasons, the Court will grant Hughston leave to proceed *in forma pauperis* and dismiss his Complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Hughston will be given an opportunity to cure the deficiencies identified by the Court by filing an amended complaint.

I.     FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY

      Hughston's allegations concern events that occurred while he was incarcerated at MCCF from December 2021 to the present.[1] He names the following Defendants: (1) Warden Sean P.

---

[1] Hughston was a pretrial detainee during most of that time, up to his conviction on March 7, 2023 for possession of a firearm, resisting arrest, reckless endangerment and a variety of other charges. *See Commonwealth v. Hughston*, CP-46-CR-0000591-2022 (C.P. Montgomery).

1

McGee; (2) Assistant Warden Thomas Berger; (3) Board of Inspectors of MCCF; (4) B.O.I. President Nancy Wieman; (5) B.O.I. Vice President C. Browne; (6) All Policy Makers of Montgomery County Correction Jhon [sic] and Jane Doe; (7) United States Attorney General Jhon [sic] Doe; (8) Director of Federal Bureau of Prisons Jhon [sic] Doe; (9) Commissioner of Corrections Jhon [sic] Doe; (10) Julio M. Algarin; (11) Mark S. Murray; (12) Richard J. Brown; and (13) Dr. G. Andrew Szekely.  (Compl. at 1-3.)  However, other than identifying the position each of them holds, Hughston makes no substantive allegations against these individuals.

Hughston alleges that upon arrival at MCCF he was "placed in 'max security housing' without a hearing and held to a recreational standard of disciplinary inmates." (Compl. at 4.) Hughston claims that MCCF "has no recreation policy in place for the prison." (*Id*.)  Although he does not explicitly state the amount of recreation time he received in maximum security housing, Hughston specifically contends that he received less than the two-hours a day required by "Title 37" for all inmates not in disciplinary custody.[2]  (*Id*.)

Hughston asserts violations of his constitutional rights based on the above allegations. He claims that he suffered mental deterioration, increased weight gain, and "all around health deterioration." (Id.)  He asks for monetary compensation and an order directing MCCF to "adhere to Title 37 recreational standards." (Compl. at 6.)

---

[2]  Hughston does not provide a full citation for "Title 37."  Based on the context of his allegations, the Court assumes Hughston is referring to 37 Pa. Code § 95.238, the section of the Pennsylvania Administrative Code applicable to county prisons that requires "[j]ails to provide all prisoners at least 2 hours daily" of physical activity with the exception of "inmates under disciplinary status or segregation [who] shall receive 1 hour of [] activity 5 days a week."  *See* 37 Pa. Code § 95.238 (1996); *see also Schwartz v. Cnty. of Montgomery,* 843 F. Supp. 962, 965 (E.D. Pa.), *aff'd,* 37 F.3d 1488 (3d Cir. 1994).

## II.     STANDARD OF REVIEW

The Court grants Hughston leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this case.³ 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  "At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.  As Hughston is proceeding pro se, the Court construes his allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

## III.    DISCUSSION

Hughston brings his claims pursuant to § 1983.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).  Hughston has failed to allege either a

---

³ Because Hughston is a prisoner, he will be obligated to pay the fee in installments in accordance with the Prison Litigation Reform Act.  *See* 28 U.S.C. § 1915(b).

3

plausible constitutional violation or a basis for any Defendants' personal involvement in the alleged wrongs.

      **A.    Failure to Allege a Constitutional Violation for Violation of State Law**

Hughston asserts a due process violation predicated on an alleged violation of state law. He claims that his placement in maximum security housing afforded him less than two-hours of daily recreation time, in violation of Title 37 of the Pennsylvania administrative code that requires two-hours of daily recreation for all inmates not housed in disciplinary segregation.[4] Violations of state law, assuming any such violations occurred here, do not on their own amount to a constitutional violation. *See Whittaker v. Cnty. of Lawrence*, 437 F. App'x 105, 109 (3d Cir. 2011) ("[A] state official's failure to follow state law does not, by itself, shock the conscience [in violation of the constitution] in the absence of additional facts."); *Maple Properties, Inc. v. Twp. of Upper Providence*, 151 F. App'x 174, 179 (3d Cir. 2005) (explaining that "'[a] violation of state law is not a denial of due process of law.'" (quoting *Coniston Corp. v. Village of Hoffman Estates*, 844 F.2d 461, 468-69 (7th Cir. 1988))). Accordingly, Hughston has not alleged a plausible constitutional violation based on a violation of Title 37. *See Wyatt v. Dep't of Prob. & Parole*, No. 19-CV-5460, 2020 WL 2307351, at *7 (E.D. Pa. May 8, 2020) ("[E]ven if this Court were to assume that the statute at issue was violated, a violation of state law generally does not equate to a federal constitutional violation.").

Hughston has not otherwise plausibly pled that receiving less than two-hours of daily recreation time violates the Fourteenth Amendment. The Due Process Clause of the Fourteenth

---

[4] Although he does not specify the amount of recreation time he receives in maximum security housing, Hughston alleges that he is receiving the amount of recreation time afforded to inmates in disciplinary segregation, which would be one-hour a day. (Compl. at 4.); *see* 37 Pa. Code § 95.238.

Amendment governs claims brought by pretrial detainees. *Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005). To establish a basis for a Fourteenth Amendment violation, a prisoner must allege that his conditions of confinement amount to punishment. *Bell v. Wolfish*, 441 U.S. 520, 538 (1979). "Unconstitutional punishment typically includes both objective and subjective components." *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007). "[T]he objective component requires an inquiry into whether the deprivation was sufficiently serious and the subjective component asks whether the officials acted with a sufficiently culpable state of mind." *Id.* (internal quotations and alterations omitted). In that regard, "a 'particular measure amounts to punishment when there is a showing of express intent to punish on the part of detention facility officials, when the restriction or condition is not rationally related to a legitimate non-punitive government purpose, or when the restriction is excessive in light of that purpose.'" *Bistrian v. Levi*, 696 F.3d 352, 373 (3d Cir. 2012) (quoting *Stevenson*, 495 F.3d at 68); *Steele v. Cicchi*, 855 F.3d 494, 504 (3d Cir. 2017).

Hughston's allegation that he was denied exercise time while in disciplinary housing does not state a plausible due process claim. Hughston alleges at most that he received less than two-hours per day of recreation time, which does not on its own establish a sufficiently serious deprivation. *See Diaz v. Cumberland Cnty.*, No. 10-3932, 2010 WL 3825704, *5 (D.N.J. Sept. 23, 2010) (dismissing a claim by pretrial detainee asserting that he was afforded only one hour of yard recreation per day); *DiMaio v. George W. Hill Intake Dep't*, 367 F. Supp. 3d 301, 306 (E.D. Pa. 2019) (inmate's inability to receive more than one hour of recreation time per day did not constitute condition of confinement that violated Eighth or Fourteenth Amendments, absent demonstration that inability to receive more recreation time amounted to punishment or threatened inmate's health). Moreover, Hughston has not alleged that Defendants' acted with an

5

intent to punish or that the restricted recreation time was not rationally related to a legitimate non-punitive government purpose. Because the Court cannot say at this time that Hughston can never state a plausible claim under the Fourteenth Amendment based on diminished recreation time, Hughston will be permitted to file an amended complaint.

Hughston, a pretrial detainee, also appears to claim that his placement in maximum security housing without a hearing violates his Fourteenth Amendment due process rights. Hughston asserts that he was "placed in 'max security housing" without a hearing . . . . with no reasoning besides how much [his] bail was." (Compl. at 4.) While this may be the basis of a plausible claim,[5] as discussed next, Hughston has not alleged that any of the named Defendants was personally responsible for this alleged violation of his rights. Accordingly, the claim will be

---

[5] While "'pretrial detainees do not have a liberty interest in being confined in the general prison population, they do have a liberty interest in not being detained indefinitely in [disciplinary segregation] without explanation or review of their confinement.'" *Singleton v. Superintendent Camp Hill SCI*, 747 F. App'x 89, 92 (3d Cir. 2018) (*per curiam*) (quoting *Bistrian v. Levi*, 696 F.3d 352, 375 (3d Cir. 2012)). "The degree of process required varies depending on the reason for the transfer, with greater process accorded to prisoners who are confined for disciplinary infractions than those moved for purely administrative reasons." *Id.* at 70. "[T]he procedures required by *Wolff v. McDonnell,* 418 U.S. 539 (1974), apply if the restraint on liberty is imposed for disciplinary reasons; if the restraint is for 'administrative' purposes, the minimal procedures outlined in *Hewitt v. Helms,* 459 U.S. 460 (1983) are all that is required." *Lewis v. Williams*, No. 05-013, 2011 WL 2441377, at *17 (D. Del. June 13, 2011) (citing *Stevenson*, 495 F.3d at 70). The procedures set forth in *Wolff* "include the right to receive written notice of the charges at least 24 hours before the hearing, the opportunity to present witnesses and documentary evidence, and a written statement of the reasons for the disciplinary action taken and the supporting evidence." *Kanu v. Lindsey*, 739 F. App'x 111, 116 (3d Cir. 2018); *see also Quiero v. Ott*, 799 F. App'x 144 at n.6 (3d Cir. 2020) (*per curiam*). *Hewitt* requires that, within a reasonable time, a detainee be given an explanation of the reason for the administrative transfer as well as an opportunity to respond. *Steele*, 855 F.3d at 507; *Stevenson,* 495 F.3d at 70 (citations omitted). Hughston has not provided sufficient factual details related to his confinement in maximum security housing. Any amended pleading should include not only who was personally responsible for placing Hughston in segregated housing but also the details of whether the placement was for disciplinary or administrative reasons as well as the length of time that Hughston remained in segregated housing.

dismissed without prejudice and Hughston will be permitted to file an amended complaint if he can cure this defect.

### B. Failure to Allege Personal Involvement

Hughston has also failed to allege the personal involvement of any Defendant. "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676; *see Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (explaining that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable). There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015). First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id.*; *see also Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)).

Hughston does not allege that any Defendant was directly responsible for denying him two-hours of daily recreation time or for placing him in restricted housing without a hearing, nor does he allege a plausible basis for their personal involvement based on actual knowledge and

acquiescence. Rather, he suggests that the Court may imply their knowledge, apparently due to their supervisory positions or positions of authority in relation to MCCF, and hold them liable on that basis. In other words, Hughston seeks to hold the Defendants vicariously liable for the acts of others based on their supervisory positions and/or positions of authority at MCCF. This is not a permissible basis for liability under § 1983. The fact that these Defendants are high-level officials is not a sufficient basis alone for liability. *See Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (*per curiam*) ("Saisi asserted that some defendants were 'in charge of agencies that allowed this to happen,' and that liability stemmed merely from defendants' 'belief' that their conduct would be 'tolerated.' However, a director cannot be held liable 'simply because of his position as the head of the [agency].'" (quoting *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005)). This is another reason why Hughston's claims fail at this juncture.[6]

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Hughston leave to proceed *in forma pauperis*, and dismiss his claims. The Court will grant Hughston leave to amend so that he can "flesh out [his] allegations by explaining the 'who, what, where, when and why' of [his] claim[s]." *See Gambrell v. S. Brunswick Bd. of Educ.*, No. 18-16359, 2019 WL 5212964, at *4 (D.N.J. Oct. 16, 2019). An appropriate Order follows, which provides further instruction as to amendment.

---

[6] Hughston, an inmate in state custody, names the United States Attorney General and the Director of the Federal Bureau of Prisons. (Compl. at 3.) The Complaint makes no connection between those two federal Defendants and Hughston's allegations related to his state confinement in MCCF. Accordingly, the United States Attorney General and the Director of the Federal Bureau of Prisons are dismissed with prejudice.

BY THE COURT:

/s/ Chad F. Kenney

**CHAD F. KENNEY, J.**